HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION,

    Plaintiff,

  v.

PREMIER SELLING TECHNOLOGIES, et al.,

    Defendants.

CASE NO. C15-463RAJ

TEMPORARY RESTRAINING ORDER & ORDER TO SHOW CAUSE

## I. INTRODUCTION

This matter comes before the court on the ex parte motion of Plaintiff Microsoft Corporation for a temporary restraining order ("TRO"). Dkt. # 2. For the reasons stated herein, the court GRANTS the motion, although it does not award all of the relief Microsoft requests. Part III of this order includes a TRO that will take effect, as to each Defendant, as soon as Microsoft effects service of this order upon that Defendant. Unless the court orders otherwise, that TRO will convert to a preliminary injunction 14 days after Microsoft serves this order, and that conversion will be effective without the necessity of additional service upon any Defendant.

The court orders that each Defendant must, within 14 days of service of this order on that Defendant, show cause why the court should not convert the TRO into a preliminary injunction. Unless Defendant a timely shows cause *and* the court issues an order terminating the TRO, the TRO will convert to a preliminary injunction 14 days

ORDER – 1

after Microsoft serves this order, and that conversion will be effective without the necessity of additional service upon any Defendant.

## II.  BACKGROUND & ANALYSIS

The "standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction." *Beaty v. Brewer*, No. 11-9907, 2011 U.S. App. LEXIS 11391, at *8 (9th Cir. May 25, 2011).  The primary difference is that a court can issue a TRO without notice to the adverse party in certain circumstances. Fed. R. Civ. P. 65(b)(1)(A).  Putting aside concerns about notice to the non-moving party, the court may issue a TRO where a party establishes (1) a likelihood of success on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  A party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and showing that the balance of hardships tips sharply in its favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  In cases where clear irreparable harm would result and there are serious questions going to the merits, a court may issue provisional relief for the purpose of permitting it to consider the merits of the dispute on a reasonable timetable. *Id.* at 1134.  *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) (noting that it appears settled that *Winter* did not "change the requisite showing for any individual factor [in the Ninth Circuit's preliminary injunction analysis] other than irreparable harm").

### A.    Likelihood of Success on the Merits

The evidence that Microsoft has submitted in support of its motion convinces the court that it is highly likely to prove that Defendants are engaging in a conspiracy to resell Microsoft's software in violation of the Copyright Act and the Lanham Act.  The Defendants are three Canadian residents (Mark Valentine, Cody Jery Allan Altizer, and

ORDER – 2

Robert Romero), one Canadian Corporation (Premier Selling Technologies, Inc., or "PST"), and a host of alter egos.[1]  Their conspiracy, reduced to its essence, is as follows:

1) Since April 2014, PST has been registered as a Microsoft authorized education reseller.  That registration allows it to sell Microsoft software products to educational users at reduced prices.

2) PST, acting through Defendants, has created fictitious sales to fictitious educational users, thereby obtaining many "product keys" from Microsoft.  A product key is a lengthy code that allows a person using it to download software from Microsoft over the internet.

3) Using a network of websites (including premiersellingtechnologies.org, amazingtechdeals.net, softwaresupplysource.com, and advantageittech.com), Defendants advertise Microsoft software at "wholesale discounts."  When a customer purchases this "discounted" software, Defendants supply the customer with a product key it obtained as described above.  Defendants pocket the profits.

4) Defendants have none of the indicia of a legitimate business enterprise.  The business address in Toronto that PST provided to Microsoft is a vacant building.  Microsoft has been unable to locate PST anywhere.  The websites that Defendants use to sell Microsoft's products are registered to fictitious entities or via services that obscure the identity of the person or entity operating the website.

PST has created more than 260 fictitious educational sales agreements.  The product keys Defendants have obtained as a result of those fictitious sales have been used on at least 20,000 devices in about 60 countries to download Microsoft software.  Microsoft estimates that it has lost almost $8 million in sales revenue as a result.

---

[1] Plaintiffs also named "Billing Systems Corp." as a Defendant, but admits that it has no evidence that the entity has been incorporated anywhere.

ORDER – 3

1       Microsoft has demonstrated that it has registered copyrights for the software
2  Defendants have illegally sold, and the Microsoft trademarks that Defendants have used
3  in their unlawful sales are federally registered.
4       Although Microsoft does not discuss the potential issues of extraterritoriality that
5  arise from enforcing the Lanham Act and Copyright Act against foreign Defendants, the
6  court is convinced that Microsoft is likely to succeed in that regard as well.  A plaintiff
7  can apply the Lanham Act to foreign activity if it satisfies three requirements: (1) the
8  foreign activity must have some effect on American commerce, (2) that effect must inflict
9  a cognizable Lanham Act injury on the party, and (3) the interest of and links to
10 American commerce must be sufficiently strong in relation to those of other nations.
11 *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 503 (9th Cir. 1991); *Reebok Int'l,
12 Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 554 (9th Cir. 1992).  Microsoft is likely to
13 succeed in proving that Defendants' foreign sales of Microsoft goods, particularly to
14 customers in the United States, are within the scope of the Lanham Act.  The Copyright
15 Act does not reach acts of infringement that take place entirely abroad.  *Subafilms, Ltd. v.
16 MGM-Pathe Communications Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994).  In this case,
17 however, Microsoft is likely to succeed in proving that Defendants' foreign conduct has
18 induced infringement of Microsoft's copyrights by customers in the United States.  *See*,
19 *e.g.*, *MGM Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1097 (C.D. Cal. 2003);
20 *see also Los Angeles News Serv. V. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 992 (9th
21 Cir. 1998) (approving Second Circuit rule that "a party becomes liable for extraterritorial
22 damages only when an act of infringement occurs within the United States, subjecting it
23 to liability as an infringer (or a contributory infringer) under the Copyright Act").
24      To summarize: Microsoft has demonstrated a strong likelihood of success on the
25 merits of its Copyright Act and Lanham Act claims.

28 ORDER – 4

### B. Irreparable Harm

Defendants' activities have caused and will cause Microsoft to lose customers. Moreover, because Defendants will not provide support to the customers to whom they unlawfully sell, Microsoft's reputation is likely to be damaged  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."). Microsoft has demonstrated that it invests substantial resources into protecting the brand that its registered trademarks represent, and has demonstrated that Defendants' conduct has irreparably harmed that brand and will continue to do so.

It is possible that monetary damages would serve as an adequate remedy for at least some of the harm Microsoft has suffered and will continue to suffer. An injunction should not issue where money damages are an adequate remedy. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013). Here, however, Microsoft's evidence establishes not only that Defendants are profiting at Microsoft's expense, but that Defendants have gone to great lengths to hide themselves and the assets that are the fruits of their unlawful conspiracy. That Microsoft is unlikely to obtain monetary relief is further evidence of irreparable harm. *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851-52 (9th Cir. 2009), *vacated for other reasons by Douglas v. Independent Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204 (2012); *Hilao v. Marcos*, 25 F.3d 1467, 1480 ("[A] district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.").

### C. Balance of Hardships

The balance of hardships tips sharply in Microsoft's favor. The only hardship Defendants face from the injunction is the cessation of their unlawful business activities.

ORDER – 5

Microsoft, by contrast, faces the hardship of ongoing lost profits, ongoing lost customers, and ongoing damage to its goodwill.

### D. Public Interest

The public interest favors Microsoft's right to enforce its trademarks and copyrights. Allowing Defendants to continue their scheme serves no public interest.

### E. TRO Without Notice to Defendants

Finally, the court concludes that it is proper to issue this order without notice to Defendants. Federal Rule of Civil Procedure 65(b)(1) permits the court to do so where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the "movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Here, Microsoft has not only demonstrated that it will continue to suffer irreparable harm every day that it waits for an injunction, but its evidence convinces the court that Defendants are likely to take steps to hide themselves, their unlawful conduct, and the fruits of that unlawful conduct if they are given notice before the court awards an injunction.

### F. Microsoft Is Not Entitled to an Order Impacting Third Parties.

Microsoft has, for the reasons stated above, satisfied its burden to demonstrate that the court should enjoin Defendants not only from continuing their unlawful conduct, but also from transferring the fruits of that conduct. But Microsoft asks for much more. It asks the court to enjoin every third party who is assisting Defendants, even innocently, in carrying out their unlawful scheme. For example, it asks the court to enjoin any internet service provider or financial institution who is assisting Defendants. Microsoft does so even though, at least so far as the record reflects, it cannot identify any third party who is assisting Defendants. Even assuming that there are third parties assisting Defendants, Microsoft has not given the court any reason to believe that they are within the jurisdictional reach of the United States. Microsoft asks, in essence, for a TRO indorsed

ORDER – 6

in blank that it can serve upon any third party, anywhere in the world, who might be helping Defendants carry out their scheme. The court will not grant that request.

Without substantially better evidence from Microsoft, evidence that demonstrates that an identified third party is assisting Defendants in carrying out their scheme, the court will not enjoin any third party except for third parties who are knowingly acting in concert with Defendants to carry out the scheme the court has already described.

### G.   Discovery May Begin Immediately.

Microsoft may commence discovery, including discovery to third parties, immediately. Microsoft asks the court to order in advance that any third party receiving a subpoena or other discovery request from Microsoft must respond to it within 5 days. Again, Microsoft asks for too much. Again, the court cannot be certain that the third parties from whom Microsoft will seek discovery are located in the United States or otherwise subject to the court's jurisdiction. Putting that aside, the court will not compel unknown third parties to produce an unknown number of documents in just five days. The court encourages any third party receiving a legitimate subpoena or other request from Microsoft to cooperate expeditiously. The court will take a dim view of any third party who obstructs legitimate efforts at discovery. The court will not, however, override ordinary legal protections for third parties in discovery. To the extent that Microsoft can point to a specific third party and a specific reason for expedited discovery from that party, it is welcome to seek relief from the court.

## III.   TEMPORARY RESTRAINING ORDER

1) Upon service of this order, and until further order of the court, Defendants (Premier Selling Technologies, Inc.; Mark E. Valentine; Cody Jery Allan Altizer; Robert Romero; Billing Systems Corp.; and any alter egos or aliases for these individuals or entities) are prohibited from the following:
   a) Selling, offering for sale, distributing, or otherwise trafficking in any Microsoft product without Microsoft's express written permission;

ORDER – 7

    b) Using Microsoft's trademarks in connection with any sale, offer for sale, advertisement, promotion of any good or service without Microsoft's express written permission;

    c) Moving, destroying, or otherwise transferring any item or document (including electronic documents) relating to Defendants sales of Microsoft products; and

    d) Deleting, destroying, modifying, or otherwise transferring any records (including electronic records) relating to Defendants' sales of Microsoft products.

2) The prohibitions of paragraph 1 apply with equal force to any employees of these individuals or entities and any person or entity knowingly acting in concert with Defendants to engage in the acts described in paragraph 1, provided that the person or entity receives notice of this order.

3) Upon service of this order, Defendants are prohibited from transferring or directing the transfer of any asset (whether tangible or intangible, monetary or non-monetary) acquired even in part as a result of Defendants' sales of Microsoft products.

Unless the court orders otherwise, this Temporary Restraining Order will convert into a preliminary injunction 14 days after it is served upon each Defendant. The court orders Defendants to show cause, before that time, why the Temporary Restraining Order should not convert to a preliminary injunction.

Defendants remain free, even if this order converts to a preliminary injunction, to move the court for relief from this order or any aspect of it.

Dated this 26th day of March, 2015.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 8